**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| SKYBELL TECHNOLOGIES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ALARM.COM, INC.,<br><br>Defendant. | Civil Action No.<br><br>**JURY TRIAL DEMANDED** |

## **COMPLAINT FOR TRADE SECRET MISAPPROPRIATION**

Plaintiff SkyBell Technologies, Inc. ("SkyBell"), by and through its counsel, brings this Complaint for misappropriation of trade secrets against Defendant Alarm.com, Inc. ("ADC"), as follows:

## **INTRODUCTION**

1. SkyBell exemplifies the kind of foundational innovation that reshapes industries. By collapsing the traditional boundaries between hardware, software, and networked intelligence, SkyBell transformed the doorbell into a fully integrated node of the connected home—pairing real-time video doorbells and cloud architecture into a unified, frictionless user experience. SkyBell's relentless prioritization of privacy, user control, and system-level interoperability quickly captured the attention of home security companies like ADC.

2. ADC, while established in the home sector, has never been a doorbell company either in origin or orientation. As a result, ADC lacked the native engineering capability to design, build, or iterate on consumer-grade, connected video doorbells when customers began demanding

them in the mid-2010s. So ADC turned to SkyBell, whose early-mover advantage, trade secrets, and patent portfolio made it a crucial technology partner.

3. In 2015, ADC entered into a "Development and Integration" agreement with SkyBell, under which ADC sourced from SkyBell video doorbell technology for integration into its platform offerings. As part of this commercial arrangement, ADC obtained a limited license to use certain of SkyBell's trade secrets—use that was both narrow in scope and expressly contingent on the supply relationship. The agreement did not transfer ownership or confer any broader usage rights to ADC. By design, SkyBell retained full control over its intellectual property portfolio, including its highly valuable trade secrets; ADC's use of SkyBell's innovations was contractually restricted and non-renewable absent mutual agreement. Pursuant to the agreement, ADC began selling video doorbells that interfaced with and incorporated SkyBell's technology and trade secrets, making hundreds of millions of dollars.

4. But ADC was severely underpaying SkyBell. As a result, SkyBell terminated the supply relationship in 2022, which also terminated ADC's rights to use SkyBell's trade secrets (other than for use with devices already sold to ADC). SkyBell reasonably expected that, pursuant to the supply agreement, ADC would stop using SkyBell's trade secrets for any video doorbells not supplied by SkyBell. But ADC had other plans. ADC began making copycat video doorbell products and used SkyBell's trade secret backend technology to support those products—misappropriating SkyBell's trade secrets with no license, no agreement, and no justification.

5. ADC's continued exploitation of SkyBell's proprietary technology—after its contractual rights to do so had unequivocally expired—is not merely a breach of commercial norms. It is a deliberate and indefensible theft of trade secrets to which it no longer has any legal entitlement.

## THE PARTIES

6.      Plaintiff SkyBell Technologies, Inc. is a corporation organized and existing under the laws of the State of Nevada with its principal place of business at 1 Jenner #100, Irvine, California 92618.

7.      Defendant Alarm.com, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 8281 Greensboro Drive, Suite 100, Tysons, Virginia 22102.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises out of violations of the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq*.

9.      This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over SkyBell's claim under the Virginia Uniform Trade Secrets Act, Va. Code §§ 59.1-336 – 59.1-343, because the claims are so related to SkyBell's Defend Trade Secrets Act claim that together they form part of the same case or controversy.

10.     This Court additionally has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because there is diversity of citizenship between SkyBell and ADC and the amount in controversy exceeds $75,000.

11.     This Court has personal jurisdiction over ADC.  This Court has general personal jurisdiction over ADC because ADC's principal place of business is within this judicial district. This Court also has personal jurisdiction over ADC based on ADC's purposeful availment of and connection to Virginia, including those that relate directly to and form the basis of the trade secret misappropriation claims described in this Complaint.  For example, ADC has misappropriated

3

SkyBell's trade secrets and has sold and offered to sell the products at issue in this lawsuit in this District.

12.    ADC, directly or through intermediaries, makes, distributes, offers for sale, and/or advertises its products and services that unlawfully incorporate SkyBell's trade secrets in the United States, the Commonwealth of Virginia, and the Eastern District of Virginia.

13.    Based on ADC's conduct, it was wholly foreseeable that it would be subject to a suit in the Eastern District of Virginia.

14.    Venue is proper in this District under 28 U.S.C. §§ 1391(b)(1)-(2) because ADC maintains its principal place of business in this District and because a substantial part of the events or omissions giving rise to SkyBell's trade secret misappropriation claims occurred in this District.

15.    Venue is proper in this Division because ADC maintains its principal place of business in Fairfax County, in this Division, and because a substantial part of the events or omissions giving rise to SkyBell's trade secret misappropriation claims occurred in this Division.

**ADC'S WILLFUL MISAPPROPRIATION OF SKYBELL'S TRADE SECRETS**

**A.    SkyBell's Trade Secrets Are Critical To Its Business And Success**

16.    SkyBell—originally called iDoorCam—was founded in 2013 by Joseph Scalisi, Desiree Mejia, and Andrew Thomas.  At the time, Mr. Scalisi worked in a small business without a receptionist.  Whenever a visitor knocked, whoever sat closest to the door had to jump up to answer. Mr. Scalisi devised a novel solution to the problem: a video doorbell that displayed every visitor on the screen of a smartphone.  Realizing he was onto something, Mr. Scalisi formed a team to design and engineer his vision.

17.    By September 2013, SkyBell successfully prototyped its video doorbell.  By that time, SkyBell had launched an extremely successful crowdsourcing campaign, raising

approximately $600,000 for its device on the website Indiegogo (plus another $300,000 in sales from the SkyBell website).

18.    In January 2014, buoyed by the success of the Indiegogo campaign, SkyBell introduced its first video doorbell product to the market.  Since that time, SkyBell has released several versions of its signature round video doorbell, as well as thinner models, including the SkyBell Slim Line and SkyBell Trim Line.

19.    SkyBell has achieved significant success by entering into major industry partnerships as well as marketing directly to consumers.  To support both its direct-to-customer products and its products delivered to key partners, SkyBell has invested substantially into innovation, research, and development.

20.    One area of significant investment for SkyBell has been in the development of its proprietary "backend" platform to support its video doorbells.  The SkyBell backend enables SkyBell's video doorbell devices to securely and stably communicate with other devices in a home security and automation system.  The SkyBell backend also enables users to interact with SkyBell's video doorbells using other electronic devices, such as a smartphone.

21.    As a result of its substantial investments and years of innovation, significant aspects of SkyBell's backend, and its functionality for interacting and communicating with SkyBell's video doorbells, are highly confidential and maintained in strict confidence as trade secrets to protect the substantial investment made to develop them.  This confidential information derives considerable value from not being publicly known outside of SkyBell, because of the competitive advantages, among other things, that the trade secrets confer on SkyBell from both a technological and business perspective.

5

22.     As part of the 2015 supply agreement, ADC used SkyBell's trade secrets and, as discussed in further detail below, continued to use SkyBell's trade secrets after SkyBell terminated the supply agreement in 2022.  These trade secrets include:

- Source code for the SkyBell backend;

- Technical know-how for developing and implementing the SkyBell backend, including in connection with video doorbell devices;

- Proprietary system architecture for the SkyBell backend, including know-how and associated source code;

- SkyBell's unique Constrained Application Protocol ("CoAP") implementation, including its CoAP messaging schema—including the field names, lengths, encryption parameters, event-type taxonomy, and call-identification logic—used by SkyBell doorbells and chimes to interact with cloud servers;

- Proprietary encryption techniques for wireless communications between a video doorbell and other connected devices and unique communication layers for coding and decoding packets, including know-how and associated source code;

- Proprietary video and live feed manager for enabling stable and secure video communications between video doorbells and connected devices, including know-how and associated source code; and

- Proprietary combination of application programming interfaces ("APIs") to enable interconnectivity between video doorbells and connected devices, including know-how and associated source code.

23.     These trade secrets derive considerable value from not being publicly known outside of SkyBell, including because of the competitive advantage that the secret nature of the information confers on SkyBell from both a technological and business perspective.  And, as discussed, SkyBell has spent significant time and money developing such confidential information and trade secrets.

**B.      SkyBell Diligently Protects Its Trade Secrets**

24.     Given the highly valuable and confidential nature of SkyBell's trade secrets, SkyBell employs extensive, numerous measures to maintain secrecy.  SkyBell has acted

6

reasonably and diligently to protect the secrecy of its trade secrets and confidential information, including through the following:

- SkyBell requires SkyBell's employees, including executive employees, to sign a SkyBell employment agreement, pursuant to which they agree to protect and not to disclose or use SkyBell's confidential information and trade secrets, including after the employee's employment period;

- SkyBell further requires exiting employees to participate in an exit process and to confirm that they have been provided access to SkyBell's confidential information and trade secrets, have returned all such information to SkyBell upon exiting, and have not maintained access to or copies of any digital or hard copy record of SkyBell's confidential information and trade secrets;

- SkyBell's proprietary and trade secret information is stored on secure servers and databases and only certain SkyBell employees and partners have access to such servers and databases. Access to these servers and databases is on a "need to know" basis and employees must be approved to obtain such access. Partners must enter into confidentiality agreements before they are permitted access;

- SkyBell also implements additional security measures to safeguard and protect sensitive information, including access restrictions, authentication, password protection, encryption, and physical protections;

- SkyBell's systems and software are designed to prevent hacking or reverse engineering, and the company's systems are protected from external and internal cybersecurity threats;

- SkyBell maintains secure offices, workspaces, and facilities and has controlled access to its buildings; and

- SkyBell requires third-parties who may be granted access to SkyBell's proprietary information to enter into non-disclosure and other agreements that protect SkyBell's proprietary information.

C.    **ADC Misappropriated SkyBell's Highly Valuable Trade Secrets After SkyBell Terminated The Parties' Supply Relationship**

25.    In 2015, recognizing SkyBell's meteoric rise in the video doorbell market, ADC—lacking the internal capacity to provide video doorbells to its home security customers—sought out SkyBell to fill the gaps in its own platform. ADC lacked the engineering expertise and technical know-how to develop consumer-grade video doorbells or to integrate them into its home

security and automation systems. Faced with intensifying market competition for video doorbells, ADC sought to repackage SkyBell's innovations as its own—seeking access to SkyBell's proprietary designs, backend systems, and associated trade secrets.

26. The parties ultimately entered into a partnership, under which SkyBell agreed to provide ADC with limited use of its proprietary technology, confidential information, and trade secrets. The purpose of this agreement was clear: ADC would rely on SkyBell's technology and trade secrets to support and enhance its own offerings in the home security market, *so long as the partnership was ongoing.*

27. Central among the agreements between SkyBell and ADC was a November 2015 "Development and Integration Agreement" ("DIA"). Under the DIA, SkyBell manufactured video doorbells for ADC. ADC, in turn, was permitted to use SkyBell's trade secrets to integrate the video doorbells with ADC's home security platform. The DIA expressly required ADC to maintain the confidentiality of SkyBell's trade secrets and not use them for any purpose other than the limited use provided therein. To that end, SkyBell granted ADC a *term-limited* license to electronically access SkyBell's APIs and other SkyBell trade secrets. Crucially, the DIA made explicit that the license conveyed no ownership, no perpetual rights, and no entitlement to SkyBell's trade secrets. And upon termination of the agreement, ADC's use of SkyBell's trade secrets was to cease entirely—except for a short, transitional period exclusively to support legacy customers.

28. ADC reaped immense financial rewards—measured in the hundreds of millions of dollars—from its commercial relationship with SkyBell. But while ADC benefitted handsomely, it failed to uphold even the basic obligations of a good-faith partner. The relationship was fundamentally lopsided: SkyBell delivered innovation and intellectual property; ADC delivered

obstruction, opportunism, and eventual betrayal.  Indeed, ADC was preparing for its betrayal for years because it actively poached several key SkyBell employees, on information and belief based on their knowledge and use of SkyBell's trade secrets.  By October 2022, SkyBell had seen enough.  SkyBell terminated the DIA and its partnership with ADC.

29.    Upon termination, which was effective November 2022, ADC's obligations were unambiguous: cease use of SkyBell's trade secrets and honor its contractual and legal duty to safeguard them.  ADC did the opposite.  ADC continued exploiting SkyBell's trade secrets—to which it no longer had any right—and rolled out blatant knockoffs of SkyBell's video doorbell products.  This mimicry was not accidental.  ADC's knock-off products bear a striking resemblance to SkyBell's designs and—critically—continue to use SkyBell's trade secrets to operate within ADC's home security infrastructure, including SkyBell's proprietary video and live feed manager for enabling stable and secure video communications between video doorbells and connected devices.



*SkyBell's Slim Line II (left); ADC's VDB750 (right)*

9

30.     But that is not all.  ADC's video doorbells continue to communicate with backend systems using CoAP—the same lightweight messaging protocol SkyBell uses in its proprietary software and firmware—and include payloads that are identical to those transmitted by SkyBell devices.  Some of the transmitted data fields continue to use the same name, length, and data type as defined in SkyBell's confidential and trade secret source code, confirming ADC's blatant misappropriation.  As just one example, ADC's video doorbells use event messages with the nomenclature and hierarchical notation that SkyBell created.  And those video doorbells use the same API endpoints defined in SkyBell's source code.

31.     ADC's misconduct was not just wrongful—it was calculated.  ADC deliberately stole SkyBell's trade secrets to sidestep the costs, delays, and technical hurdles associated with developing its own competing solution.  By hijacking SkyBell's technology, ADC secured an artificial (and unlawful) shortcut to market and divert SkyBell's customer base for its own profit.  This was not inadvertent or negligent.  It was willful, malicious theft, executed with the purpose and effect of inflicting commercial harm on SkyBell while enriching ADC through unlawful means.

## COUNT I
## (MISAPPROPRIATION UNDER THE DEFEND TRADE SECRETS ACT)

32.     SkyBell realleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint.

33.     SkyBell has spent years developing proprietary technologies relating to video doorbells, and these proprietary technologies constitute trade secrets as defined by the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq*.

34.     SkyBell is the sole and exclusive owner of the trade secrets misappropriated by ADC described above.

10

35.    SkyBell's trade secrets are related to products and services used in, or intended for use in, interstate and foreign commerce.

36.    SkyBell used, and continues to use, its trade secrets throughout the United States, including in connection with its continued development and promotion of its video doorbell and other home security products, which it sells throughout the United States.

37.    SkyBell's trade secrets derive independent economic value, both actual and potential, from not being generally known and not being readily ascertainable through proper means by SkyBell's competitors, including ADC, or to other persons or entities who might obtain economic value from their disclosure or use.

38.    SkyBell takes reasonable measures under the circumstances to protect the secrecy of such trade secrets, including as described above.

39.    During its partnership with SkyBell, ADC acquired limited rights to use SkyBell's trade secrets under circumstances giving rise to a duty to maintain the secrecy of SkyBell's trade secrets.  To this day, ADC is still in possession of SkyBell's trade secrets, as described above.

40.    Following SkyBell's termination of the parties' supply agreement, ADC improperly used and/or disclosed to others SkyBell's trade secrets, for its own benefit and without SkyBell's express or implied consent, in violation of its obligations to SkyBell.

41.    ADC misappropriated SkyBell's trade secrets, has used, and continues to use SkyBell's trade secrets without authorization and in violation of ADC's obligations not to use such information for its own benefit.  ADC's misappropriation, as set forth above, constitutes misappropriation as defined by 18 U.S.C. § 1839(5).

42.    ADC's misappropriation of SkyBell's trade secrets was and continues to be intentional, knowing, willful, and malicious.  ADC knew or should have known that SkyBell's

11

trade secrets should not be misappropriated by a competitor, including because ADC knew or should have known of its obligations to maintain the secrecy of SkyBell's trade secrets, as described above. ADC further knew or should have known that SkyBell maintains its trade secrets as confidential and its trade secrets are not generally available to the public or SkyBell's competitors, such that having its trade secrets would provide significant benefit to a competitor seeking to compete with SkyBell. Thus, SkyBell is entitled to an award of exemplary damages and reasonable and necessary attorneys' fees.

43.    As a direct and proximate result of ADC's willful, improper, and unlawful misappropriation of SkyBell's trade secrets, SkyBell has suffered, and will continue to suffer, damages while ADC has been unjustly enriched, in an amount to be proven at trial.

44.    SkyBell is also entitled to injunctive relief to protect its trade secrets by (1) enjoining ADC from further possessing, using, or disclosing SkyBell's trade secrets; (2) enjoining ADC from altering or deleting SkyBell's trade secrets, or any related evidence; and (3) requiring ADC to turn over any and all copies of SkyBell's trade secrets to SkyBell. SkyBell has no adequate remedy at law.

**COUNT II**
**(MISAPPROPRIATION UNDER THE**
**VIRGINIA UNIFORM TRADE SECRETS ACT)**

45.    SkyBell realleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint.

46.    SkyBell has spent years developing proprietary technologies relating to video doorbells, and these proprietary technologies constitute trade secrets as defined by the Virginia Uniform Trade Secrets Act, Va. Code § 59.1-336 *et seq*.

47.    SkyBell is the sole and exclusive owner of the trade secrets misappropriated by ADC described above.

12

48.     SkyBell's trade secrets are related to products and services used in, or intended for use in, interstate and foreign commerce.

49.     SkyBell used, and continues to use, its trade secrets throughout the United States and in the Commonwealth of Virginia, including in connection with its continued development and promotion of its video doorbell and other home security products.

50.     SkyBell's trade secrets derive independent economic value, both actual and potential, from not being generally known to and not being readily ascertainable through proper means by SkyBell's competitors, including ADC, or to other persons or entities who might obtain economic value from their disclosure or use.

51.     SkyBell takes reasonable measures under the circumstances to protect the secrecy of such trade secrets, including as described above.

52.     During its partnership with SkyBell, ADC acquired limited rights to use SkyBell's trade secrets under circumstances giving rise to a duty to maintain the secrecy of SkyBell's trade secrets.  To this day, ADC is still in possession of SkyBell's trade secrets, as described above.

53.     Following SkyBell's termination of the parties' supply agreement, ADC improperly used and/or disclosed to others SkyBell's trade secrets, for its own benefit and without SkyBell's express or implied consent, in violation of its obligations to SkyBell.

54.     ADC misappropriated SkyBell's trade secrets, has used, and continues to use SkyBell's trade secrets without authorization and in violation of ADC's obligations not to use such information for its own benefit.  ADC's misappropriation, as set forth above, constitute misappropriation as defined by the Virginia Uniform Trade Secrets Act, Va. Code § 59.1-336 *et seq*.

55.     ADC's misappropriation of SkyBell's trade secrets was and continues to be intentional, knowing, willful, and malicious.  ADC knew or should have known that SkyBell's trade secrets should not be misappropriated by a competitor, including because ADC knew or should have known of its obligations to maintain the secrecy of SkyBell's trade secrets, as described above.  ADC further knew or should have known that SkyBell maintains its trade secrets as confidential and its trade secrets are not generally available to the public or SkyBell's competitors, such that having its trade secrets would provide significant benefit to a competitor seeking to compete with SkyBell.  Thus, SkyBell is entitled to an award of punitive damages and reasonable and necessary attorneys' fees.

56.     As a direct and proximate result of ADC's willful, improper, and unlawful misappropriation of SkyBell's trade secrets, SkyBell has suffered, and will continue to suffer, damages while ADC has been unjustly enriched, in an amount to be proven at trial.

57.     SkyBell is also entitled to injunctive relief to protect its trade secrets by (1) enjoining ADC from further possessing, using, or disclosing SkyBell's trade secrets; (2) enjoining ADC from altering or deleting SkyBell's trade secrets, or any related evidence; and (3) requiring ADC to turn over any and all copies of SkyBell's trade secrets to SkyBell.  SkyBell has no adequate remedy at law.

## REQUEST FOR JURY TRIAL

SkyBell hereby demands a trial by jury on all claims so triable presented in this Complaint.

## PRAYER FOR RELIEF

WHEREFORE, SkyBell respectfully prays for relief as follows:

1.     Judgment in SkyBell's favor and against ADC on all causes of action;

2.     Judgment that ADC misappropriated SkyBell's trade secrets;

14

3.  Judgment that ADC's misappropriation of SkyBell's trade secrets was willful and malicious;

4.  Injunctive relief to prevent use by ADC of any of the trade secrets belonging to SkyBell or any information, strategies, source code, or anything else derived from SkyBell's trade secrets;

5.  Compensation in an amount to be proven at trial, including but not limited to unjust enrichment, actual losses, lost profits, and/or imposition of a reasonable royalty;

6.  Pre-judgment interest;

7.  Post-judgment interest;

8.  Exemplary damages, pursuant to 18 U.S.C. § 1836(b)(3)(C), and to the extent provided by law;

9.  Attorneys' fees, including pursuant to 18 U.S.C. § 1836(b)(3)(C) and/or Virginia Uniform Trade Secrets Act, Va. Code § 59.1-338.1;

10. Punitive damages, including pursuant to Virginia Uniform Trade Secrets Act, Va. Code § 59.1-338(B);

11. An order requiring ADC to account for all gains, profits, and advantages derived from its misappropriation of SkyBell's confidential, proprietary, or trade secret information, and an order imposing a constructive trust over profits derived from ADC's misappropriation;

12. An order that ADC immediately assign, transfer, and return all right, title, and interest in SkyBell's trade secrets that ADC misappropriated and all other of SkyBell's confidential information that was improperly used by ADC, in all forms and in all manners in which they now exist, whether in electronic form, paper

format, or in any other tangible or intangible entitlement or format, so that SkyBell retains all legal and equitable title in its trade secrets and confidential information; and

13. Any further relief that this Court deems just and proper.

Dated: July 3, 2025

Respectfully submitted,

By: */s/ Roman Lifson*
    Roman Lifson (VSB No.43714)
    Belinda D. Jones (VSB No. 72169)
    Christian & Barton, LLP
    901 E. Cary Street
    Suite 1800
    Richmond, VA 23219
    Telephone: (804) 697-4100
    Fax: (804) 697-4112

    Giri Pathmanaban
    gpathmanaban@cgsh.com
    Lucas Lonergan
    llonergan@cgsh.com
    Cleary Gottlieb Steen & Hamilton
    1841 Page Mill Road
    Palo Alto, California 94304
    Telephone: (650) 815-4100
    Fax: (650) 815-4199

    Thomas Yeh
    tyeh@cgsh.com
    Cleary Gottlieb Steen & Hamilton
    650 California St., Suite 2400
    San Francisco, California 94108
    Telephone: (415) 796-4400
    Fax: (415) 796-4499

    Clement Naples
    cnaples@cgsh.com
    Cleary Gottlieb Steen & Hamilton
    One Liberty Plaza
    New York, New York 10006
    Telephone: (212) 225-2000
    Fax: (212) 225-3999

    *Counsel for Plaintiff SkyBell Technologies, Inc.*

17