IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| SKYBELL TECHNOLOGIES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:25-cv-01105 (RDA/WBP) |
| ) | |
| ALARM.COM, INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant Alarm.com, Inc.'s ("Defendant") Motion to Dismiss, Dkt. 17, and Plaintiff SkyBell Technologies, Inc.'s ("Plaintiff") Motion for Leave to File Surreply, Dkt. 27 (collectively, the "Motions"). This Court has dispensed with oral argument as it would not aid in the decisional process. *See* Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter is fully briefed and ripe for disposition. Considering the Complaint (Dkt. 1), the Motions, the Memoranda in Support (Dkts. 18, 28), the Memoranda in Opposition (Dkt. 25, 29), and the Reply Briefs (Dkt. 26, 30), this Court GRANTS Plaintiff's Motion for Leave to File Surreply and DENIES Defendant's Motion to Dismiss.

I. BACKGROUND

A. Factual Background[1]

Plaintiff is a corporation that was founded in 2013 by Joseph Scalisi, Desiree Mejia, and Andrew Thomas. Dkt. 1 ¶ 16. These three individuals created the company based on a concept for a doorbell with a camera that connected to an occupant's smartphone. *Id.* After a successful

---

[1] For purposes of considering the Motion to Dismiss, the Court accepts all facts contained within the Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

1

crowdfunding campaign, Plaintiff introduced its first video doorbell product to the market in 2014 and has continued to introduce similar products into the marketplace since. *Id.* ¶ 18. One signature aspect of Plaintiff's products is the "backend" platform that allows for the doorbells to "securely and stably communicate with other devices in a home security and automation system," as well as smartphones. *Id.* ¶ 20.

Defendant is an established company creating products within the "home sector." *Id.* ¶ 2. Defendant has never been a doorbell company, and, thus, lacked the native engineering capability to design, build, or iterate on consumer-grade, connected video doorbells when customers began demanding them in the mid-2010s. *Id.* So Defendant turned to Plaintiff, and the parties ultimately entered into a partnership, pursuant to which Plaintiff agreed to provide Defendant with limited use of its proprietary technology, confidential information, and trade secrets. *Id.* ¶ 26. Plaintiff alleges that the purpose of the agreement was clear: Defendant would rely on Plaintiff's technology and trade secrets to support and enhance its own offerings in the home security market and compensate Plaintiff for same, so long as the partnership was ongoing. *Id.*

Specifically, in November 2015, the parties entered the "Development and Integration Agreement" ("DIA"). *Id.* ¶ 27. Plaintiff alleges that, under the DIA, it was responsible for manufacturing video doorbells for Defendant, who was then permitted to use Plaintiff's trade secrets to integrate the doorbells with its own home security platform. *Id.* Plaintiff alleges that the DIA expressly required Defendant to maintain the confidentiality of Plaintiff's trade secrets and to not use them for any purpose other than the limited use provided therein. *Id.* Plaintiff alleges that the DIA also granted Defendant a term-limited license to electronically access Plaintiff's trade secrets. *Id.* Plaintiff alleges that the DIA made clear that the license "conveyed no ownership, no perpetual rights, and no entitlement to [Plaintiff's] trade secrets." *Id.*

Additionally, Plaintiff alleges that, upon the agreement's termination, Defendant was to cease all use of Plaintiff's trade secrets, "except for a short, transitional period exclusively to support legacy customers." *Id.*

The DIA itself states that its purpose is "to define the terms under which the [Plaintiff] Devices and the [Plaintiff] Services will be integrated with the [Defendant] Services to enable interoperability and control of [Plaintiff] Devices and access to [Plaintiff] Services as part of the [Defendant] Services." Dkt. 26-2 ¶ 1.[2] And the DIA explains, "[f]or the avoidance of doubt, the intended end-user experience will connect the [Plaintiff] Devices with [Defendant's] mobile applications, without dependencies on any other mobile applications." *Id.* The DIA further states that both parties are barred from "decompil[ing], disassembl[ing], or otherwise reverse engineer[ing] the other Party's software or attempt[ing] to discover any source code or underlying ideas or algorithms of the other Party's software." *Id.* ¶ 3.3. The DIA also states that the parties may not "modify or create a derivative work of the other Party's software (except as otherwise expressly authorized by the other Party in writing)." *Id.*

Eventually, the partnership soured, and Plaintiff alleges that Defendant had "prepar[ed] for its betrayal for years" by poaching several key employees from Plaintiff, stating that, "on information and belief," the poaching was based on the employees' knowledge and use of Plaintiff's trade secrets. *Id.* ¶ 28.

Plaintiff alleges that, in October 2022, it unilaterally terminated the DIA, and that the

---

[2] The Court may consider "documents attached to the complaint or incorporated by reference, including those attached to the motion to dismiss, so long as they are integral to the complaint and authentic . . . ." *Epcon Homestead, LLC v. Town of Chapel Hill*, 62 F.4th 882 (4th Cir. 2023). Because Plaintiff relies upon the DIA in its Complaint, Dkt. 1 ¶¶ 27-28, and Plaintiff did not argue that the Court could not consider the DIA (beyond its arguments about the novelty of the associated argument on Reply) or dispute the authenticity of the copy that Defendant attached as an exhibit, the Court will consider the DIA in its analysis.

termination became effective in November 2022. *Id.* at ¶¶ 28, 29. Plaintiff alleges that the termination did not stop Defendant from continuing to use Plaintiff's trade secrets, as Defendant released "blatant knockoffs" that resembled Plaintiff's own doorbells. *Id.* ¶ 29. Plaintiff includes in its Complaint a side-by-side comparison of one of its products—the Slim Line II—with one of Defendant's products released after the termination of the DIA—the VDB750. *Id.* Beyond visual similarity, Plaintiff alleges that these products used Plaintiff's trade secrets to operate within Defendant's home security infrastructure, including Plaintiff's proprietary video and live feed manager for enabling stable and secure video communications between video doorbells and connected devices. *Id.* Moreover, Plaintiff alleges that the products continue to communicate with backend systems using the same lightweight messaging protocol that Plaintiff uses in its proprietary software and firmware and include payloads that are identical to those transmitted by Plaintiff's devices. *Id.* ¶ 30. Some of the transmitted data fields continue to use the same name, length, and data type as defined in Plaintiff's confidential and trade secret source code, and Defendant's video doorbells use event messages with the nomenclature and hierarchical notation that Plaintiff created and the same Application Programming Interface endpoints defined in Plaintiff's source code. *Id.*

### B. Procedural Background

On July 3, 2025, Plaintiff filed its Complaint. Dkt. 1. Plaintiff alleges two claims against Defendant: misappropriation of trade secrets in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.* (the "DTSA") (Count 1), and misappropriation of trade secrets in violation of the Virginia Uniform Trade Secrets Act, Va. Code. § 59.1-336 *et seq.* (the "VUTSA") (Count 2). *Id.* at 14.

On August 25, 2025, Defendant filed its Motion to Dismiss for Failure to State a Claim

under FRCP 12(b)(6) with its Memorandum in Support. Dkts. 17, 18. In the Motion to Dismiss, Defendant argues that all of Plaintiff's claims are barred by a three-year statute of limitations. Dkt. 18 at 1. Specifically, Defendant argues that the information upon which Plaintiff relies in the Complaint to allege that Defendant misappropriated its alleged trade secrets was available to Plaintiff long before the July 3, 2022 bar date. *Id.* at 14. Defendant states that, before this date, Plaintiff knew (1) it had entrusted the alleged trade secrets to Defendant, which had allegedly lacked the engineering expertise and technical know-how to develop its own doorbell technology, (2) Defendant had been "poaching" Plaintiff's employees "for years," and (3) Defendant had developed and launched its own competing, "knockoff" doorbells. *Id.* Despite possessing this information, Plaintiff did not take steps to investigate. *Id.* If Plaintiff had investigated, it would have discovered that Defendant's doorbells allegedly use some of the same instructions, with the same name, length, and content, as Plaintiff's doorbells, which are alleged facts that Plaintiff now relies upon in the Complaint. *Id.* Thus, Defendant argues, long before the July 3, 2022 bar date, Plaintiff was, or through reasonable diligence should have been, on notice of all the facts and circumstances it now uses to allege trade secret misappropriation by Defendant, and Plaintiff's claims should be dismissed as time-barred. *Id.* at 20.

On September 8, 2025, Plaintiff filed its Opposition. Dkt. 25. In its Opposition, Plaintiff argues that Defendant's earlier doorbell sales could not have put Plaintiff on notice of the alleged trade secret misappropriation because Defendant was expressly permitted to use Plaintiff's trade secrets in Defendant's doorbells during the duration of the DIA—which did not end until November 2022. *Id.* at 1. Thus, Plaintiff argues, Defendant's alleged misappropriation did not begin until after November 2022, and, accordingly, the Complaint is timely. *Id.* at 2.

On September 15, 2025, Defendant filed its Reply. Dkt. 26. In Reply, Defendant states

that Plaintiff's interpretation of the DIA is "directly at odds with the unambiguous text of the DIA, common sense, and the allegations of the Complaint." *Id.* at 7. In support of its argument, Defendant attached the DIA itself and its relevant amendments. Dkts. 26-2, 26-3, 26-4, 26-5, 26-6, 27-7.

On September 18, 2025, Plaintiff filed its Motion for Leave to File Surreply with its Memorandum in Support. Dkts. 27, 28. In the Motion for Leave to File Surreply, Plaintiff argues that Defendant raised new arguments in the Reply and that Plaintiff would be prejudiced without the opportunity to respond. Dkt. 28 at 1. Specifically, Plaintiff argues that Defendant did not argue that the DIA prohibited Defendant from using Plaintiff's trade secrets to manufacture its own doorbells in its opening Motion and only attached the DIA to its Reply, that Defendant's cases in support of the proposition that the Court can resolve a matter of contract interpretation on a motion to dismiss are inapposite, and that Defendant's interpretation of the DIA is incorrect. *Id.* at 1-2.

On September 22, 2025, Defendant filed its Opposition. Dkt. 29. Defendant responds that its arguments in Reply about the DIA were merely responses to Plaintiff's argument that the DIA allowed Defendant to manufacture competing products, which was only raised for the first time in Plaintiff's Opposition to the Motion to Dismiss. *Id.* at 1. And Defendant argues that any prejudice Plaintiff might face would be of its own making because Plaintiff could have attached the DIA to its Opposition when it put the contents of the DIA in issue. *Id.* at 2. Defendant asks that, if the Court allows Plaintiff's Surreply, it also allow Defendant's Response to the Surreply. *Id.*

The same day, Plaintiff filed its Reply. Dkt. 30. In Reply, Plaintiff argues that its Opposition was consistent with its Complaint, and thus did not introduce a new theory. *Id.* at 2. Plaintiff also opposes the consideration of Defendant's Response to the Surreply as

unaccompanied by a motion and argues that the Response confirms that resolution of the contract interpretation dispute is a fact-intensive inquiry inappropriate at the motion to dismiss stage. *Id.* at 2-3.

## II. LEGAL STANDARD

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleaded factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). When reviewing a motion brought under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). "[T]he court 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)). Additionally, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Generally, courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion, *see Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015), but they "may consider documents . . . attached to the motion to dismiss, as long as they are integral to the complaint and authentic[,]" *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).

III. ANALYSIS

The Court will first consider Plaintiff's Motion for Leave to File Surreply before addressing the merits of Defendant's Motion to Dismiss. For the reasons given below, the Court will grant the Motion for Leave to File Surreply and deny the Motion to Dismiss.

A. Motion for Leave to File Surreply

Whether to "allow[] a surreply is within the court's discretion." *Adams v. Applied Bus. Servs.*, 2019 WL 7817080, at *1 (E.D. Va. Aug. 30, 2019). Here, the parties appear to agree that the DIA, the interpretation thereof, and whether the Court can resolve the interpretation thereof at this stage are central questions to this dispute. Whether Plaintiff raised new arguments in its Opposition or Defendant raised new arguments in its Reply is a closer call. To accomplish dispositional efficiency and to avoid prejudice to either party, the Court will grant all procedural motions and will consider both the Surreply and the Response to the Surreply in ruling on the Motion to Dismiss. *See id.* (holding that a court should "consider whether prejudice will result from the court considering a new argument without the opposing party's having an opportunity to respond").

B. Motion to Dismiss

Turning to the Motion to Dismiss, considering the entire record before it, the Court finds that dismissal is inappropriate at this stage. As a preliminary matter, the Court notes that, as a general rule, "a defense based on the statute of limitations must be raised by the defendant through an affirmative defense." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). A Rule 12(b)(6) motion to dismiss, which tests the sufficiency of the complaint, "generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's complaint is time-barred." *Id.* Indeed, "these defenses are more properly reserved for consideration on a motion for

summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993). Only in "relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint" may a defendant raise—and the Court consider—a statute of limitations defense at the motion to dismiss stage. *Goodman*, 494 F.3d at 464. When the facts necessary to establish the time bar are not facially apparent, however, the Court should allow the suit to proceed to discovery. *See Cruz v. Maypa*, 773 F.3d 138, 146 (4th Cir. 2014) (reversing the district court's dismissal and remanding for discovery when Plaintiff pleaded facts sufficient to support equitable tolling of the statute of limitations).

Under the DTSA, a civil action for misappropriation of trade secrets "may not be commenced later than 3 years after the date on which the misappropriation with respect to which the action would relate is discovered or by the exercise of reasonable diligence should have been discovered." 18 U.S.C. § 1836(d). The VUTSA adopts the same standard. *See* Va. Code. § 59.1-340 ("An action for misappropriation shall be brought within three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered.").

Here, the central question is whether Plaintiff exercised reasonable diligence in investigating the alleged misappropriation prior to filing its claims. Whether a plaintiff has exercised reasonable diligence in the filing of a claim is a fact-specific determination. In their briefs, the parties here focus primarily on whether publications about Defendant's first doorbell, the VDB770, put Plaintiff on notice that Defendant allegedly misappropriated Plaintiff's trade secrets.[3] The parties disagree over whether the DIA gave Defendant a license to use Plaintiff's

---

[3] The Court takes judicial notice of the content of the relevant SEC filings and other publicly available documents included in the record (Dkts. 18-2, 18-3, 18-4, 18-5). *See Yates v. Mun. Mortg. & Equity, Inc.*, 744 F.3d 874, 881 (4th Cir. 2014) (taking judicial notice "of the content of the relevant SEC filings and other publicly available documents included in the record" in addressing a motion to dismiss).

9

trade secrets in its own products at the time the VDB770 was announced. Plaintiff essentially puts forth a ripeness argument and maintains that the DIA did give Defendant such a license, and thus the misappropriation did not occur until after the DIA expired because only then did Defendant's use become misappropriation. Defendant argues that the DIA did not give Defendant such a license and the similarity in visual presentation and reported functionality between the VDB770 and Plaintiff's doorbell should have led Plaintiff to investigate the VDB770 further and find the alleged similarities in the video and live feed manager, lightweight messaging protocol, payloads, transmitted data fields, and Application Programming Interface endpoints on which Plaintiff bases the instant Complaint.

Even if the Court were to agree, on the record before it, that the DIA unambiguously did not give Defendant a license to use Plaintiff's trade secrets in its own products (or indeed that it expressly barred such use), *see* Dkt. 26-2 ¶ 3-3 (agreeing not to "modify or create a derivative work of the other Party's software"), the Court would also find that, under the DIA, Plaintiff could not reasonably have investigated further in the way Defendant suggests because Plaintiff was itself bound not to "decompile, disassemble, or otherwise reverse engineer [Defendant's] software or attempt to discover any source code or underlying ideas or algorithms or [Defendant's] software." Dkt. 26-2 ¶ 3.3. Defendant does not dispute that further investigation would require Plaintiff to breach this provision. Nor does Defendant provide any cases supporting the proposition that the exercise of reasonable diligence requires would-be plaintiffs to breach contracts—let alone courts making this finding at the motion-to-dismiss stage. *See* Dkt. 29-1 at 6; *cf. S.R. Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 378 (3d Cir. 1992) (holding that plaintiff was not entitled to cease performance of his contractual duties after suspicion that defendant breached material terms of the

contract).[4]

Beyond the launch of the VDB770, Defendant notes that Plaintiff pleads that Defendant had never been a doorbell company, and, thus, lacked the native engineering capability to design, build, or iterate on consumer-grade, connected video doorbells when customers began demanding them in the mid-2010s, and that Defendant had been "poaching" Plaintiff's employees "for years" before 2022. Dkt. 1 ¶¶ 2, 28. However, the facts alleged in the Complaint regarding the alleged "poaching" are minimal and insufficient to establish that Plaintiff was on notice that its trade secrets had allegedly been misappropriated at this stage. For example, it is unclear when the alleged poaching began, who the allegedly poached employees were, what their jobs entailed, and whether there was any reason to suspect that they had taken trade secrets with them. Although Plaintiff now alleges "on information and belief" that the employees were hired because of "their knowledge and use of [Plaintiff's] trade secrets," *id.* ¶ 28, Plaintiff also alleges that, at the time of the "poaching," its employees had agreed to protect Plaintiff's trade secrets and other confidential information, including after the employees left the company, *id.* ¶ 24. Additionally, Plaintiff alleges that, during the offboarding process, Plaintiff required all exiting employees to return any information said employees have about Plaintiff's trade secrets, as well as remove said information from the employees' personal devices. *Id.* Moreover, such "poaching" was never prohibited by the DIA or any of the subsequent amendments. When viewing the well-pleaded facts in the light most favorable to the non-moving party, it appears that Plaintiff went to great lengths to protect its trade secrets and, without the benefit of hindsight or any insight into who these employees were or what roles they performed in each company, the Court cannot find that these allegations are

---

[4] Both parties stipulated that the DIA would be "governed by, and construed in accordance with, the laws of the State of Delaware, United States of America, excluding any conflicts of law rules requiring the application of the substantive law of any other jurisdiction." Dkt. 26-2 ¶ 12.1.

11

sufficient to establish that Plaintiff was on notice such that its claims had accrued at this stage of the proceeding. It may be that Defendant ultimately succeeds in establishing that the Complaint is time-barred, but it will have to renew the arguments presented here at a later stage of the case to do so.

Therefore, at least at this stage, the Court cannot conclude that, by the exercise of reasonable diligence, Plaintiff should have discovered the alleged misappropriation sooner. Accordingly, the Motion to Dismiss will be denied.[5]

---

[5] Plaintiff asserts for the first time in its Surreply that, "when the VDB770 was released, [Defendant's] executive told Mr. Giovanni Tomaselli and Ms. Desiree Mejia (officers of [Plaintiff]) that the VDB770 was based on [Defendant's] own code and technology, not [Plaintiff's]." Dkt. 28-1 at 6. This assertion provides further support for the Court's conclusion that the Motion to Dismiss should be denied. *Cf. Raytheon Co. v. Indigo Sys. Corp.*, 688 F.3d 1311, 1318 (Fed. Cir. 2012) (reversing summary judgment where plaintiff reasonably relied on defendant's reassurance that plaintiff's trade secrets were not used to create a competing product while the two parties were in a contractual agreement); *Goodman*, 494 F.3d at 466 (explaining motion to dismiss should not be granted on affirmative defense unless plaintiff's potential rejoinder is "foreclosed").

## IV. CONCLUSION

Accordingly, it is hereby ORDERED that Plaintiff's Motion for Leave to File Surreply (Dkt. 27) is GRANTED; and it is

FURTHER ORDERED that Defendant's Motion to Dismiss (Dkt. 17) is DENIED; and it is

FURTHER ORDERED that a scheduling order will issue promptly.

The Clerk is directed to forward copies of this Memorandum Opinion and Order to all counsel of record.

It is SO ORDERED.

Alexandria, Virginia
March 4, 2026

/s/
Rossie D. Alston, Jr.
United States District Judge